**COMMERCIAL UNION INSURANCE COMPANY**

v.

**UNITED STATES of America, et al.**

v.

**William SCOTT, Appellant.**

**No. 91–5391.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 5, 1993.

Decided Aug. 10, 1993.

Leonard C. Pederson, Jr., argued the cause and filed the brief for appellant.

Robert L. Shapiro, Asst. U.S. Atty., argued the cause for appellees. With him on the brief were J. Ramsy Johnson, U.S. Atty., and John D. Bates, R. Craig Lawrence, and Robert L. Shapiro, Asst. U.S. Attys.

Donald P. Mailberger entered an appearance for Commercial Union Ins. Co.

Before MIKVA, Chief Judge, and EDWARDS and BUCKLEY, Circuit Judges.

BUCKLEY, Circuit Judge:

Commercial Union Insurance Company issued a $25,000 policy to Samir Mohamed Said Ahmed, who negligently injured a Secret Service officer, William Scott. Both Officer Scott and the Federal Government claimed the proceeds of the insurance fund: Officer Scott for his non-medical damages, and the Government for the $18,596 in medical bills it had paid on his behalf. In response to these competing claims, Commercial Union filed a complaint for interpleader in the district court, seeking a declaration on the disposition of the fund.

Although the asserted basis for the district court's jurisdiction is flawed, we nonetheless find that we may assume jurisdiction over the case under 28 U.S.C. § 1653 (1988), which allows for amendment of jurisdictional claims in the appellate court. We further find that the district court erred in holding that the Government's claim had priority over Officer Scott's. As the governing statute, the Federal Medical Care Recovery Act, is silent on the question of priority, we turn to equitable principles governing interplead-

er, which require that the fund be divided between the claimants on a pro rata basis. We therefore reverse the district court and remand for a determination of each party's share of the fund.

## I. BACKGROUND

### A. Interpleader

■ Interpleader allows a party exposed to multiple claims on a single obligation or property to settle the controversy and satisfy his obligation in one proceeding. *See* Zechariah Chaffee, Jr., *The Federal Interpleader Act of 1936: I*, 45 Yale L.J. 963, 963 (1936) ("*Federal Interpleader Act: I*"); *see also* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil 2d § 1702, at 493–97, § 1704, at 500 (1986) ("FP & P"). Where a party in control of contested property, the stakeholder, makes no claim on the property and is willing to release it to the rightful claimant, interpleader allows him "to put the money or other property in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court." Chaffee, *Federal Interpleader Act: I*, 45 Yale L.J. at 963.

■ Interpleader may be brought in federal court under either the Federal Interpleader Act, 28 U.S.C. § 1335 (1988), or under Rule 22 of the Federal Rules of Civil Procedure. Rule interpleader "in no way supersedes or limits" the remedy available under the Act. Fed.R.Civ.P. 22(2).

### B. Facts

On May 30, 1987, while Officer William Scott was on duty with the Uniform Division of the Secret Service, Mr. Ahmed, Commercial Union's insured, made an improper left turn and then came to an abrupt stop in front of Officer Scott. In order to avoid a collision, Officer Scott lowered his motorcycle to the pavement; he sustained serious injuries. Mr. Ahmed carried a liability policy with Commercial Union in the amount of $25,000 per injured person.

As Officer Scott was injured while on duty, the United States paid his medical bills, which came to $18,586. By letter dated May 18, 1988, the Secret Service demanded that amount from Commercial Union pursuant to the Federal Medical Care Recovery Act ("FMCRA"), 42 U.S.C. §§ 2651–53 (1988 & Supp. III 1991). In July 1988, Commercial Union offered the fund to Scott in exchange for a full release of Commercial Union and its insured, Mr. Ahmed, who had apparently left the country. Officer Scott later sought to accept Commercial Union's offer on the condition that the settlement check be made out to him and his counsel. In August 1988, the Secret Service again demanded payment for its medical expenses.

In the face of these competing claims, Commercial Union initiated this interpleader against the United States Secret Service and William Scott. The district court ruled for the United States, allowing it to recover the full amount expended on Officer Scott's medical care, and granting only the remainder to Officer Scott. *See Commercial Union Ins. Co. v. United States*, No. 89–1108, 1991 WL 221613, *2, (D.D.C. Oct. 10, 1991). This appeal followed.

## II. ANALYSIS

### A. Jurisdiction

Although neither party challenged this court's jurisdiction, "it is well established that a court of appeals must first satisfy itself of its own jurisdiction, *sua sponte* if necessary...." *Citizens for the Abatement of Aircraft Noise, Inc. v. Metropolitan Washington Airports Auth.*, 917 F.2d 48, 53 (D.C.Cir.1990), *aff'd*, — U.S. —, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991). We are not satisfied with the jurisdictional grounds alleged by plaintiff Commercial Union, but we find that the jurisdictional claim may in effect be amended to establish federal question jurisdiction.

■ The central distinction between statutory interpleader and rule interpleader is the basis for a federal court's subject matter jurisdiction under each. *See* Wright, Miller & Kane, FP & P § 1703, at 498. The Act requires that two or more of the adverse claimants to a contested fund be "of diverse citizenship as defined in section 1332 of this title." 28 U.S.C. § 1335(a)(1); *see also Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1381 (9th Cir.1988). Rule 22, however, "is merely a procedural device; it confers no jurisdiction on the federal courts." *Morongo Band*, 858 F.2d at 1382. Thus, an interpleader brought under Rule 22 must fall within one of the general statutory grants of federal jurisdiction. *Id.* This, of course, may include diversity jurisdiction, 28 U.S.C. § 1332; thus, in contrast to section 1335, which focuses on the diversity of the claimant-defendants, Rule 22 (*per* section 1332) requires diversity between the *plaintiff-stakeholder* and the claimants. *See* Wright, Miller & Kane, FP & P § 1710, at 537–39.

Commercial Union's complaint states that it has offices in the State of Maryland and that its principal place of business is Massachusetts; that "Defendant United States of America, Department of the Treasury, United States Secret Service is domiciled in the District of Columbia"; and that Officer Scott is a resident of the State of Maryland. *See* Complaint for Interpleader and Declaratory Relief at 1–2, *Commercial Union Ins. Co. v. United States*, No. 89–1108 (D.D.C. Apr. 25, 1989) ("Complaint"). Based on its assertion that the United States is domiciled in the District, Commercial Union advanced two theories in support of subject matter jurisdiction: the Federal Interpleader Act, 28 U.S.C. § 1335, and standard diversity jurisdiction under Rule 22 and 28 U.S.C. § 1332. *See* Complaint at 1, 2.

■ It is well established, however, that the United States is not a citizen for diversity purposes and that "U.S. agencies cannot be sued in diversity." *General Ry. Signal Co. v. Corcoran*, 921 F.2d 700, 703 (7th Cir. 1991). In addition to the fact that neither the United States nor its agencies fit any of the categories of parties listed in 28 U.S.C. § 1332(a), the Supreme Court has noted, with respect to the Interstate Commerce Commission and the Railroad Labor Board, that they "are not citizens of any State, but have the same relation to one State as to another." *State of Texas v. Interstate Com-*

*merce Comm'n*, 258 U.S. 158, 160, 42 S.Ct. 261, 262, 66 L.Ed. 531 (1922) (footnote omitted).

■ In sum, Commercial Union based its claim for jurisdiction on diversity between itself and the Secret Service (under Rule 22), or between the Secret Service and Mr. Scott (under the statute). As the Secret Service does not have citizenship for purposes of establishing diversity, we cannot take jurisdiction on either ground.

Jurisdiction might have been alleged in this case under Rule 22 and 28 U.S.C. § 1331, the federal question doctrine. At first glance, a claim of federal question jurisdiction in an interpleader seemingly runs afoul of the "well-pleaded complaint" rule. An action arises under federal law if that law creates the cause of action; and the Supreme Court has "long and consistently held that the federal law element must appear on the face of plaintiff's *well-pleaded* complaint," not on speculation as to a defense to plaintiff's claim. *Morongo Band*, 858 F.2d at 1383 (emphasis in original) (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983)). A stakeholder's interpleader claim "is typically one seeking discharge and is difficult to characterize as asserting either federal or state rights." *Id.*

■ We join several other circuits, however, in recognizing that interpleader ought to be treated in this regard in the same fashion as a request for a declaratory judgment. *See Bell & Beckwith v. United States*, 766 F.2d 910, 912–13 (6th Cir.1985); *see also Morongo Band*, 858 F.2d at 1384; *General Ry. Signal Co.*, 921 F.2d at 706 n. 6. Both interpleader and declaratory judgment actions "enable a defendant to precipitate a plaintiff's suit in order to avoid multiple liability or other inconvenience." *Bell & Beckwith*, 766 F.2d at 914 (quotation marks and brackets omitted); *see also Morongo Band*, 858 F.2d at 1384. In such cases, although the plaintiff's claim does not raise a federal question, it may stake the federal court's jurisdiction on "a defense to a claim that would raise a federal question and that defendant could have asserted in a coercive action." *Bell & Beckwith*, 766 F.2d at 912.

Thus, in both interpleader and in declaratory judgment actions, "federal question jurisdiction exists if such jurisdiction would have existed in a coercive action by the defendant." *Id.* at 914; *see also Morongo Band*, 858 F.2d at 1384; *General Ry. Signal Co.*, 921 F.2d at 706 n. 6.

■ Defendant United States based its claim to the fund on the FMCRA. Thus, federal question jurisdiction would have existed in a coercive action brought by the United States and thereby could have been alleged in this interpleader. While it is true that "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced," on the grounds that "[t]he plaintiff is absolute master of what jurisdiction he will appeal to," *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 3233 n. 6, 92 L.Ed.2d 650 (1986), it is also true that "[d]efective allegations of jurisdiction may be amended . . . in the trial or appellate courts." 28 U.S.C. § 1653.

Section 1653 may operate as an exception to the general principle that federal jurisdiction depends on the facts as they exist when the complaint is filed. *See Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989). The exception, however, is limited: "§ 1653 speaks of amending '*allegations* of jurisdiction,' which suggests that it addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Id.* at 831, 109 S.Ct. at 2222 (emphasis in original). This reading of the statute means, for example, that a party may not "substitute new causes of action" to allege federal question jurisdiction where other grounds for jurisdiction have been defeated. *See Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 512 (5th Cir.1985) (cited approvingly in *Newman–Green*, 490 U.S. at 832 n. 5, 109 S.Ct. at 2223 n. 5).

This case falls within the narrow parameters of section 1653. Federal question jurisdiction in this case is not based on a new cause of action; the United States claimed this fund on the basis of the FMCRA before the interpleader was filed in the district court. The grounds for the amended juris-

diction thus may be found on the facts of the case as articulated in the complaint and the record below; and an amendment merely corrects a flawed statement of jurisdiction, not a flaw in the jurisdictional facts.

█ While ordinarily this court would call on the appropriate party to amend its complaint to establish jurisdiction, in this interpleader the plaintiff is not a party to the appeal, making a formal amendment in this court impossible. At first blush, this suggests that we ought to remand to the district court; the Supreme Court, however, has articulated an exception to the formal amendment requirement that is applicable in certain very narrow circumstances. *See Schlesinger v. Councilman,* 420 U.S. 738, 744 n. 9, 95 S.Ct. 1300, 1306 n. 9, 43 L.Ed.2d 591 (1975); *see also Wolfe v. Marsh,* 846 F.2d 782, 785 n. 4 (D.C.Cir.1988). To begin with, "the necessary, but omitted, averments [must] affirmatively appear in the record." *Wolfe,* 846 F.2d at 785 n. 4. Secondly, the constructive amendment must foster judicial economy and further the purpose behind section 1653—ensuring that a party is not denied his day in court on the basis of technical flaws in his pleading. *Id.; see also International Bhd. of Boilermakers v. Local Lodge D354,* 897 F.2d 1400, 1402-03 (7th Cir.1990) (following a similar course of action based on section 1653 when remand would be "meaningless").

The averments establishing federal question jurisdiction affirmatively appear in the record—the basis for section 1331 jurisdiction is the federal government's claim to the funds under the FMCRA, a claim that predated the filing of this action and that was listed in the "Statement of Material Facts As To Which There Is No Dispute" filed by Officer Scott with the district court. Furthermore, in an interpleader, the plaintiff is a party to the case in name only and is concerned solely with getting the real parties in interest to the courthouse. Thus the "plaintiff" is not even a party to this appeal, and a remand for formal amendment would accomplish nothing. Such a remand would delay the case on the basis of a hypertechnicality, would run counter to the goal of section 1653,

and would violate basic notions of judicial economy.

We therefore invoke the Supreme Court's exception to the formal amendment requirement. As the parties appear before us in an interpleader, leaving us without the "plaintiff" on appeal, and as the averments necessary to establish jurisdiction affirmatively appear in the record, we deem the complaint amended under 28 U.S.C. § 1653 and accordingly assume jurisdiction over the case pursuant to 28 U.S.C. § 1331.

## B. The Federal Medical Care Recovery Act

█ The Government argues that the Federal Medical Care Recovery Act grants it priority to the disputed fund and, therefore, that we should affirm the district court's decision. According to the Government, "the primary purpose of the [Act] is to enable the government to recoup some of the millions of dollars it expends annually providing medical care to federal employees." Brief for Appellees at 3. We find, however, that the Act does not speak to the issue of priority.

The statute distinguishes between two distinct categories of damages: the medical expenses incurred by the Government on behalf of the injured employee and the damages the employee is entitled to receive, net of those expenses. While the statute grants the United States the right to recover the former, there is nothing in its language to suggest that the Government's claim has a priority over the employee's. Section 2651(a) of the FMCRA provides, in relevant part, that

> the United States shall have a *right to recover from [third parties] the reasonable value of the care and treatment [paid for by the Government]* and shall as to this right be subrogated to any right or claim that the injured or diseased person . . . has against such third person *to the extent of the reasonable value of the care and treatment so furnished or to be furnished.*

42 U.S.C. § 2651(a) (emphasis added). The section's reference to subrogation, moreover, suggests that the two claims are to be treated alike. "Subrogation" is defined as

[t]he substitution of one person in the place of another with reference to a lawful claim ... so that he who is substituted succeeds to the rights of the other in relation to the ... claim....

Black's Law Dictionary 1279 (5th ed. 1979). The Government, as subrogee, does not secure rights superior to those of its employee; it merely steps into his shoes in order to assert a claim to that part of the total damages that is its due.

Finally, the Government's interpretation of the statute runs headlong into 42 U.S.C. § 2652(c), which provides that

No action taken by the United States in connection with the rights afforded under this legislation shall operate to deny to the injured person the recovery for that portion of his damage not covered hereunder.

42 U.S.C. § 2652(c). The Government was unable to square this section with its suggestion that the statute grants it priority. The Government asserted in its brief that the section protected "the victim's legal right to recover damages," Brief for Appellees at 5, but at oral argument Government counsel could not articulate a single hypothetical situation in which the Government's initiation of a suit would serve to keep the individual claimant out of court.

Our reading of section 2651(a) is reinforced by section 2652(c)'s concern for protecting the injured employee's ability to recover "that portion of his damage not covered" by the FMCRA. As the Government's construction of the statute would render section 2652(c) useless, and our reading gives it meaning, the Government's version cannot stand. *See In re Surface Mining Regulation Litig.*, 627 F.2d 1346, 1362 (D.C.Cir.1980) ("[E]ffect must be given, if possible, to every word, clause and sentence of a statute ... so that no part will be inoperative or superfluous, void or insignificant.") (quoting 2A Sutherland, Statutory Construction § 46.06 (4th ed. 1973)) (internal quotation marks omitted).

The Government also invokes 42 U.S.C. § 2652(b), which provides that the head of the relevant agency may

waive any ... claim, in whole or in part, for the convenience of the Government, or if he determines that collection would result in undue hardship upon the person who suffered the injury or disease....

42 U.S.C. § 2652(b)(2). The Government argues that there would be no need for this provision if its claim did not have a priority over the employee's, because the Government could constructively waive its claim by declining to bring suit.

Contrary to the Government's contention, section 2652(b) serves a purpose even though the statute does not establish priority. A review of the cases brought under the Act illustrates that a Government waiver is not the same as a decision not to sue. Because the FMCRA creates the possibility of multiple litigation, the waiver is necessary to encourage and/or allow settlements. A "silent waiver" cannot serve the same purpose or achieve the same results as an explicit one so long as the Government retains the authority to sue.

As courts applying the FMCRA have recognized, "the statute gives the United States an independent right of recovery against the tortfeasor." *United States v. Housing Auth. of Bremerton*, 415 F.2d 239, 241 (9th Cir. 1969). Further, they agree that section 2651(b) is permissive: "[T]he statute authorizes the United States to enforce its independent right either by intervention in a suit brought by the injured party, or on its own if no such action is brought for six months." *Id.; see also* 42 U.S.C. § 2651(b). Finally, the United States may bring an independent action against the tortfeasor "even where a suit is brought by the injured party within six months and the United States does not intervene." *Housing Authority of Bremerton,* 415 F.2d at 241–42. The courts have held, generally, that a settlement or judgment in the individual claimant's case does not prejudice the Government from later suing the tortfeasor. *See United States v. Merrigan,* 389 F.2d 21, 22 n. 1, 26 (3d Cir. 1968) (permitting suit to be brought over a year after the victim's suit); *see also United States v. York,* 398 F.2d 582, 585–87 (6th Cir.1968) (holding that although the individual had settled within six months of treatment,

the statute does not bar the Government from later exercising its independent right of recovery). Regardless of the course of action taken by the injured party, the Government's right to sue is limited only by the federal statute of limitations. *See Housing Authority of Bremerton,* 415 F.2d at 242.

These cases illustrate that an agency's decision not to sue is not the equivalent of an express waiver. Section 2651(b) leaves tortfeasors uncertain in the face of double liability, or at least daunted by the prospect of multiple litigation. *Cf., e.g., Housing Authority of Bremerton,* 415 F.2d at 242 (noting the possibility of multiple litigation under the Act); *see also Leatherman v. Pollard Trucking Co.,* 482 F.Supp. 351, 353 (E.D.Okla.1978) (recognizing that statute creates prospect of multiple litigation and/or double liability and considering motion to join United States); *Babcock v. Maple Leaf, Inc.,* 424 F.Supp. 428, 431 (E.D.Tenn.1976) (discussing motion to join the United States prompted by prospect of multiple litigation). Because the United States is bound only by the federal statute of limitations and may bring its own suit at any time prior to its running, only an express waiver by the Government will allow and encourage settlements in cases where the Government decides not to seek its share. Thus, section 2652(b) serves a vital purpose regardless of whether the Government has the superior claim.

Having found that the Government does not enjoy a priority, we face the question of how the fund is to be divided. Because the statute sheds no light on how to apportion the fund, we turn for guidance to the principles governing the distribution of funds in an interpleader. *Cf. Cockerham v. Garvin,* 768 F.2d 784, 787 (6th Cir.1985) (where government seeks recovery as beneficiary of limited fund, equitable principles apply).

C. "Equity is Equality"

Interpleader originated at common law, "but the primary development and principles of interpleader occurred in equity where the use of interpleader was most common." *Underwriters at Lloyd's v. Nichols,* 363 F.2d 357, 360 (8th Cir.1966). In an interpleader where an insurer with limited contractual liability is exposed to claims that exceed that limit, the remedy draws on equitable principles and common sense: "An interpleader in this situation will presumably result in the distribution of the limited fund by the interpleader court on some sort of ratable basis." Dan B. Dobbs, The Law of Remedies § 2.12, at 130 (1973). Specifically, the court will give each claimant "a share of the fund proportionate to [his] share of the total judgment figure." *Id.; see also* Wright, Miller & Kane, FP & P § 1702, at 497, § 1705, at 513–14. *Cf. State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 533–34, 87 S.Ct. 1199, 1205, 18 L.Ed.2d 270 (1967) (stating that interpleader may be used to establish "orderly contest" for limited fund so as to prevent early claimants from securing "disproportionate slice").

Other circuits that have addressed similar cases have noted that interpleader may be used to achieve an orderly distribution of a limited fund. *See, e.g., Farmers Irrigating Ditch & Reservoir Co. v. Kane,* 845 F.2d 229 (10th Cir.1988) (suggesting that a disinterested stakeholder, but not the tortfeasor, may bring a complaint in interpleader to allow for pro rata distribution of a limited fund); *General Elec. Credit Corp. v. Grubbs,* 447 F.2d 286, 289 (5th Cir.1971) (recognizing that interpleader may be invoked where valid claims exceed a limited fund). In *Cockerham v. Garvin,* 768 F.2d 784 (6th Cir.1985), for example, a case that also involved the FMCRA, the injured employee settled with the tortfeasors for an amount that may have represented something less than the full value of his damages. *See id.* at 787 (describing the settlement as possibly "discounted"). As part of that settlement, the individual claimant placed $20,000 in escrow to cover the Government's claim under the FMCRA. *See id.* at 785. When the Government sought to recover the full amount due it, despite the possibility that the individual had accepted a discount, the Sixth Circuit noted that the Government's relationship to the fund was "as a beneficiary." *Id.* at 787. Accordingly, the court held that equitable principles applied, and that the Government's settlement ought to be reduced to reflect any discount accepted by the individual claimant. *See id.*

In deciding whether an insurance company could bring a federal interpleader before the various claims had been brought to judgment, the Eighth Circuit looked for guidance to the work of Professor Zechariah Chaffee, who wrote a series of articles on interpleader in the earlier part of this century. *See Underwriters at Lloyd's*, 363 F.2d at 360 & n. 2. Professor Chaffee observed, and the court in *Underwriters at Lloyd's* agreed, that an insurance company

> is no interloper in asking a unification of the numerous tort actions brought against [an] assured. Its request benefits the claimants as well as itself. Instead of a haphazard looting of a fund by the first comers, a bill in the nature of interpleader filed before numerous judgments have ripened assures a fair share of the insurance money to each victim and conforms to the principle, "Equity is equality."

*Underwriters at Lloyd's*, 363 F.2d at 365 (quoting Chaffee, *The Federal Interpleader Act of 1936: II*, 45 Yale L.J. 1161, 1166 (1936)).

█ We fully agree. As the FMCRA is silent on the question of priority, and as "equity is equality," we find that the proper course here is to distribute the limited fund on a ratable basis, such that each claimant receives "a share of the fund proportionate to their share of the total judgment figure." Dobbs, The Law of Remedies § 2.12, at 130.

### III. CONCLUSION

While the district court did not have jurisdiction over this case on the grounds alleged by plaintiff, we find that the complaint may be amended under 28 U.S.C. § 1653. Because the grounds for alternative jurisdiction in this interpleader are evident on the face of the complaint and may be found in the record, we deem the complaint amended.

We disagree, however, with the district court's finding that the FMCRA grants the Government priority over Officer Scott in their competing claims to the fund. As we read the statute, it does not grant priority to either claimant; we therefore turn to the principles governing interpleader to determine how the fund ought to be distributed.

The equitable course in cases such as this one is to distribute the fund on a ratable basis. In order to perform this distribution, the district court must determine each claimant's share of the total judgment. While the Government's damages have been clearly established, it is unclear what damages are due Officer Scott. In order that the district court may determine the total judgment and perform the ratable distribution, its decision in this case is vacated and the case is

*Remanded.*