ASBESTOS WORKERS LOCAL NO. 23 PENSION FUND, by and through Robert T. Norcross and Les J. Zane, as Trustees, Plaintiff

v.

UNITED STATES of America, Internal Revenue Service and Patrick Kelley, Defendants

No. CIV.A.1:01–CV–2253.

United States District Court, M.D. Pennsylvania.

Jan. 12, 2004.

Charles W. Johnston, Johnston & Diamond, PC, Camp Hill, PA, for Plaintiffs.

Jennifer L. Best, Trial Attorney, U.S. Department of Justice, Washington, DC, Joseph J. Terz, U.S. Attorney's Office, J. Stephen Feinour, L. Renee Lieux, Nauman, Smith, Shissler & Hall, LLP, Harrisburg, PA, for Defendants.

## *MEMORANDUM*

CONNER, District Judge.

Presently before the court in this interpleader action are cross-motions for summary judgment by defendants, Patrick Kelley and the Internal Revenue Service ("IRS"), seeking disbursement of payments owed under a pension benefit plan administered by plaintiff, Asbestos Workers Local No. 23 Pension Fund ("Fund"), and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1401. Patrick Kelley, named as designated beneficiary under the plan, became entitled to a guaranteed amount of benefits following the death of his father, Richard Kelley, the participant in the plan. The IRS contends that tax liens against Richard Kelley's property at-

tached to the term benefits payable to Patrick Kelley. The Fund filed this interpleader action to resolve the rights of the IRS and Patrick Kelley to the benefit payments.

The question presented is whether guaranteed minimum benefits payable to a designated beneficiary under a pension plan constitute "property" of the participant to which a tax lien may attach.[1] For the reasons that follow, the court finds that such benefits do not constitute property of the participant and will grant Patrick Kelley's motion for summary judgment.

## I. *Statement of Facts* [2]

For a number of years, plaintiff's father, Richard Kelley, was employed under a collective bargaining agreement that included a pension benefit plan. (Doc. 27 ¶ 6; Doc. 29, Exs. 7–8). The plan offered several payment options, one of which granted monthly benefits to the participant throughout the participant's life and, if the participant died before receiving 120 payments, "the remainder of said [120] payments" to a designated beneficiary. (Doc. 29, Ex. 7 at 17a). Under this option, deemed the "ten-year-guarantee pension," either the participant or the beneficiary was guaranteed to receive at least 120 monthly benefit payments from the Fund.

On May 20, 1996, Richard Kelley applied for benefits under the plan and selected the ten-year-guarantee pension option. (Doc. 27 ¶ 7; Doc. 29, Ex. 8). He named his son, Patrick Kelley, as his designated beneficiary. His retirement became effective on June 1, 1996, and on that date he began receiving pension benefits of approximately $1100 per month. (Doc. 27 ¶¶ 9–10; Doc. 29, Ex. 8).

In 1997, after Richard Kelley failed to satisfy IRS demands for satisfaction of tax obligations from previous years, a lien in favor of the United States attached by operation of law to all of his property, including his interest in pension benefits under the plan. (Doc. 27 ¶ 12; Doc. 29, Exs. 1–6). The IRS served notices of levy on the Fund, demanding disbursement of a portion of the monthly pension benefits as they became due. Consequently, starting in November 1997 the Fund reduced Richard Kelley's benefit payments by approximately $500, remitting this sum to the IRS each month. (Doc. 27 ¶¶ 13–15; Doc. 29, Exs. 9–10).

The payments continued until June 5, 2001, when Richard Kelley died. At the time of his death, Richard Kelley had received sixty-one payments under the plan. (Doc. 27 ¶ 18; Doc. 29, Ex. 11). Soon thereafter, the IRS advised the Fund that the lien against Richard Kelley remained attached to the minimum benefits payable to his designated beneficiary and that the Fund should continue to honor the agency's levy. The Fund notified Patrick Kelley that he was eligible under the plan to receive fifty-nine benefit payments as des-

---

**1.** Although several courts have grappled with the issue of whether a tax lien against the participant attaches to future pension benefits owed to the *participant, see Shanbaum v. United States,* 32 F.3d 180 (5th Cir.1994); *In re Connor,* 27 F.3d 365 (9th Cir.1994); *Travelers Ins. Co. v. Rattermann,* No. C–1–94–466, 1996 WL 149332 (S.D.Ohio Jan.12, 1996); *Toledo Plumbers & Pipefitters Plan & Trust v. United States,* No. 3:80–CV–7513, 1991 WL 172932 (N.D.Ohio June 21, 1991); *In re Fuller,* 204 B.R. 894 (Bankr.W.D.Pa.1997); *In re*

*Jacobs,* 147 B.R. 106 (Bankr.W.D.Pa.1992), the parties have not cited and the court has been unable to find any case addressing whether a tax lien against the participant attaches to benefits payable to the *beneficiary.*

**2.** Because Patrick Kelley failed to file a responsive statement of material facts, as required by Local Rule 56.1, all facts set forth in the statement of material facts of the IRS "will be deemed to be admitted." L.R. 56.1.

ignated beneficiary but that the IRS had asserted a levy against the benefits. (Doc. 27 ¶¶ 19–21). The Fund reduced Patrick Kelley's monthly benefits by the amount allegedly subject to the IRS levy and placed that portion in a separate escrow account pending resolution of the conflicting claims. (Doc. 29, Ex. 11).

On November 27, 2001, the Fund filed a complaint for interpleader, naming the IRS and Patrick Kelley as defendants. The complaint sought resolution of the competing claims of the two parties and a release from liability in connection with the withheld pension payments. (Doc. 1). The IRS filed a counterclaim against the Fund for immediate distribution of the amounts withheld and a cross claim against Patrick Kelley for foreclosure of the tax liens. (Doc. 8). Patrick Kelley filed a counterclaim against the Fund for immediate disbursement of the amounts withheld. (Doc. 10). The court ordered the amount held in escrow by the Fund and all future payments owed under the plan to be deposited into the registry of the court pending disposition of the controversy. (Doc. 14). The claimants subsequently filed cross-motions for summary judgment. (Doc. 68).

## II. *Subject Matter Jurisdiction*

■ Federal courts have an independent obligation to ensure the existence of subject matter jurisdiction over claims before them, even when the parties do not raise the issue. *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003); *see also* FED. R. CIV. P. 12(h)(3) ("Whenever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). In this case, plaintiff's complaint premises jurisdiction on 28 U.S.C. § 1335, which grants district courts original jurisdiction over all actions "in the nature of interpleader" involving "[t]wo or more adverse claimants, of diverse citizenship as defined in section 1332 of this title." 28 U.S.C. § 1335. Under § 1332, however, diversity exists only among citizens of different states and "foreign state[s]," not between a citizen of a state and the federal government or an agency thereof. *See id.* § 1332; *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 584 (D.C.Cir.1993). Because the IRS is an agency of the federal government, no diversity of citizenship exists between the claimants, and the court cannot exercise jurisdiction over the action under § 1335. *See Texas v. ICC*, 258 U.S. 158, 160, 42 S.Ct. 261, 66 L.Ed. 531 (1922); *Commercial Union Ins.*, 999 F.2d at 584.

■ This conclusion, however, does not mandate dismissal. In addition to § 1335, interpleader actions may be brought under Federal Rule of Civil Procedure 22, which, unlike its statutory counterpart, permits actions to be premised on a jurisdictional basis other than diversity of citizenship. *See* FED. R. CIV. P. 22; 7 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1710, at 590 (3d ed.2001). Jurisdiction exists over a Rule 22 interpleader action if the claimants' potential causes of action against the stakeholder would be subject to the court's jurisdiction under federal law. *Bell & Beckwith v. United States*, 766 F.2d 910, 912–13 (6th Cir.1985) ("In interpleader actions as in declaratory judgment actions, federal question jurisdiction exists if such jurisdiction would have existed in a coercive action by the defendant."); *accord Commercial Nat'l Bank of Chi. v. Demos*, 18 F.3d 485, 488–89 (7th Cir.1994); *Commercial Union*, 999 F.2d at 585; *Morongo Band of Mission Indians v. Cal. State Bd.*, 858 F.2d 1376, 1384 (9th Cir.1988); *Home Corp. v. deLone*, No. Civ. A. 96–7672, 1997 WL 214849, at *4 n. 11 (E.D.Pa. Apr.23, 1997). In this case, defendants' potential

causes of action against plaintiff—actually asserted as counterclaims—arise under the Internal Revenue Code and ERISA. *See* 26 U.S.C. § 7403; 29 U.S.C. § 1132(a)(1)(B). These claims are subject to the district court's jurisdiction under 26 U.S.C. § 7402, which grants jurisdiction over claims by the United States to enforce the Internal Revenue Code, and 28 U.S.C. § 1331, which permits jurisdiction over claims by beneficiaries to recover benefits under ERISA. *See* 26 U.S.C. § 7402; 28 U.S.C. § 1331. Thus, the court will construe this action as one arising under Federal Rule of Civil Procedure 22 and exercise jurisdiction over plaintiff's claims. *See St. Louis Union Trust Co. v. Stone,* 570 F.2d 833, 835–36 (8th Cir.1978) (holding that district court could exercise jurisdiction over Rule 22 interpleader action brought by trust company to resolve claims by beneficiary of entitlement to benefits on which the IRS asserted a tax lien); *see also* 28 U.S.C. § 2410 ("[T]he United States may be named a party in any civil action or suit in any district court ... of interpleader or in the nature of interpleader with respect to ... property on which the United States has or claims a ... lien.").

## III. *Summary Judgment*

### A. *Standard of Review*

Federal Rule of Civil Procedure 56 permits the entry of summary judgment against a party on an issue or a claim when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Saldana v. Kmart Corp.,* 260 F.3d 228, 231–32 (3d Cir.2001). In resolving a motion for summary judgment, courts should not weigh conflicting evidence or make factual findings but, rather, should "consider all evidence in the light most favorable to the non-moving party" to determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Schnall v. Amboy Nat'l Bank,* 279 F.3d 205, 209 (3d Cir.2002). Summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. *Validity of the Tax Lien*

To ensure the collection of owed taxes, the Internal Revenue Code creates a lien in favor of the United States on "all property and rights to property, whether real or personal," belonging to a person who neglects or refuses to satisfy a tax obligation after demand from the government. 26 U.S.C. § 6321; *see also United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Following attachment of this lien, the Secretary of the Treasury may impose an administrative levy on the property to the extent necessary to secure full repayment. 26 U.S.C. § 6331. Such levies may be served not only on the taxpayer but also on third parties, such as employers and pension fund administrators, to compel disbursement of compensation or benefits as they become due to the taxpayer. *Id.* § 6331(b), (d); *see also Nat'l Bank of Commerce,* 472 U.S. at 719–20, 105 S.Ct. 2919; *In re Connor,* 27 F.3d 365, 366–67 (9th Cir.1994).

Because the Internal Revenue Code clearly grants to the IRS the power to attach and levy all "property and rights to property," the validity of a tax lien often

hinges on whether the asset to be attached qualifies as "property." The Code, however, neither defines "property" nor provides guidance on whether the existence of property is a matter of state or federal law. See 26 U.S.C. § 6321. Courts struggled to find the appropriate source for the meaning of the term[3] until *Drye v. United States*, 528 U.S. 49, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999), in which the Supreme Court held that federal law governs whether an asset constitutes "property" for purposes of § 6321, but that state law creates the "interests" by which this standard is judged. *Id.* at 57–58, 120 S.Ct. 474.

■ Applying this standard requires distinctions among three related concepts: "assets," "interests," and "property." An "asset" is any "item that ... has value," including cash, chattels, land, rights to contractual performance, and choses in action. BLACK'S LAW DICTIONARY 112 (7th ed.1999); *see United States v. Craft*, 535 U.S. 274, 278–79, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002); *United States v. Bess*, 357 U.S. 51, 59–60, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); *Congress Talcott Corp. v. Gruber*, 993 F.2d 315, 319–20 (3d Cir.1993). Assets may be tangible or intangible, vested or contingent, real or personal. *See Craft*, 535 U.S. at 278–79, 122 S.Ct. 1414; *Congress Talcott*, 993 F.2d at 319–20; *Connor*, 27 F.3d at 366–67. Simply, an asset is anything that has a legal existence and can be owned.

■ "Interests" in an asset are those legally cognizable means by which an individual may exert control over the asset. *See Craft*, 535 U.S. at 278–79, 122 S.Ct. 1414. Such interests may include the power to profit from or use the asset, to exclude others or inhibit its sale, or to devise or designate beneficiaries of the asset. *See id.; Bess*, 357 U.S. at 59–60, 78 S.Ct. 1054. Because an individual's interests depend on the extent to which they may be enforced in courts in that person's jurisdiction, state law generally controls this issue. *Drye*, 528 U.S. at 57–58, 120 S.Ct. 474.

■ "Property," for purposes of the Internal Revenue Code, is a label applied under federal law to an asset when a person has a sufficiently "beneficial interest" in it. *See id.* at 58, 120 S.Ct. 474. When an individual may gain personally from the exercise of his or her interest, federal law will recognize the asset as property of the individual. *See Craft*, 535 U.S. at 278–79, 122 S.Ct. 1414. To use a familiar metaphor, a person's interests in an asset under state law are sticks in the person's bundle, and federal law decides whether the bundle is heavy enough to be called "property." *Id.*

■ Thus, the validity of a lien against a delinquent taxpayer under the Internal Revenue Code requires resolution of three related issues: (1) what "asset" the government seeks to attach, (2) what "interests" the taxpayer has in the asset under state law, and (3) whether the taxpayer derives sufficient benefits from the interests for the asset to constitute "property" of the taxpayer under federal law.

### 1. *Nature of the Asset To Be Attached*

■ A prerequisite to determining an individual's "interests" in an asset, or de-

---

3. *Compare Leggett v. United States*, 120 F.3d 592, 594–96 (5th Cir.1997) (holding that state law defines whether individual has "property" for purposes of § 6321); *Mapes v. United States*, 15 F.3d 138, 140 (9th Cir.1994) (same), *with Drye Family 1995 Trust v. United States*, 152 F.3d 892, 898–99 (8th Cir.1998) (holding that federal law defines whether individual has "property" for purposes of § 6321), *aff'd*, 528 U.S. 49, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999); *United States v. Comparato*, 22 F.3d 455, 457–58 (2d Cir.1994) (same).

ciding whether the asset qualifies as "property," is identifying the precise nature of the asset that the government seeks to attach. *See id.* at 278–81, 122 S.Ct. 1414. Whether the asset arises from a contract, statute, or common law heavily influences the analysis of rights available under state law, and initial classification demands close attention. *See id.; Bess,* 357 U.S. at 59–60, 78 S.Ct. 1054.

In this case, the asset claimed by the IRS is Richard Kelley's contractual right to the minimum benefit payments under the pension plan. According to the agency, the lien that arose during Richard Kelley's life attached to those benefits and remained effective following his death, when the right to the payments was transferred to Patrick Kelley. *See id.* at 57, 78 S.Ct. 1054 ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes *cum onere*[4] ....' "). Having identified the asset as a contractual right, the court must consult state contract law to determine Richard Kelley's "interests" in the benefit at the time of attachment.

### 2. *Interests in the Asset*

▮▮▮▮ When the asset at issue is a right to contractual performance, the plain language of the contract forms the centerpiece of the discussion of the individual's interests. *See, e.g., id.* at 55, 78 S.Ct. 1054; *Willison v. Consolidation Coal Co.,* 536 Pa. 49, 637 A.2d 979, 982 (1994). Both federal and state law dictate strict fidelity to the unambiguous meaning of the terms of an agreement, and a party's interests must be measured by those provisions.[5] *See Int'l Union, United Auto. Workers of Am., Local No. 1697,* 188 F.3d 130, 138 (3d Cir.1999); *Willison,* 637 A.2d at 982.

The contract in this case, the pension plan, entitled Richard Kelley to collect lifetime benefits from the Fund, but offered no method by which he could obtain or alienate the funds during his life. The plan did not permit participants to redeem benefits early or to surrender the value of the annuity for an immediate lump-sum payment. Essentially, Richard Kelley's rights under the plan were limited to suing for monthly payments as they became due, if not made promptly by the Fund. Indeed, the only individual with authority to compel payment of the minimum benefits is the designated beneficiary. The plan accords the beneficiary, not the participant, a right to receive these payments and grants him or her the option, with Fund approval, to obtain them as a lump sum.[6] The pow-

---

4. "With the burden." BLACK'S LAW DICTIONARY 386 (7th ed.1999).

5. In cases premised on employee benefit plans governed by ERISA, state law contract actions are generally preempted, *see Egelhoff v. Egelhoff ex rel. Breiner,* 532 U.S. 141, 146–47, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), suggesting that federal common law should be applied to determine what interests the contract vests in the taxpayer for purposes of this analysis. However, because this case may be resolved on the basis of traditional contract principles common to both state and federal common law, *compare Epright v. Envtl. Res. Mgmt., Inc.,* 81 F.3d 335, 339–41 (3d Cir.1996) (stating that plain meaning of ERISA plan controls interpretation), *with Willison,* 637 A.2d at 982 (stating that plain meaning of contract controls interpretation), it is unnecessary to decide which should be applied in this case. *See United Auto. Workers of Am., Local No. 1697,* 188 F.3d 130, 138 (3d Cir.1999) ("[T]raditional rules of contract construction apply [to ERISA claims] when not inconsistent with federal ... law.").

6. Viewed another way, the plan embodies two distinct contracts. One provided a life annuity to Richard Kelley, and his rights were limited to enforcing that contract during his life. Upon his death, that contract ended, and a new contract, with Patrick Kelley as the intended beneficiary, arose. Thereafter, Pat-

er to enforce payment of the minimum benefits lies exclusively with Patrick Kelley.

▰ The only power Richard Kelley had over the minimum payments during his life was the ability to designate a beneficiary of those funds after his death. The plan clearly provided him with discretionary authority to choose a beneficiary and change that designation at any time. (Doc. 29, Ex. 7 at 37a). Because this authority offered Richard Kelley limited control over the minimum payments, it constitutes a cognizable interest in those payments. *See Drye,* 528 U.S. at 58, 120 S.Ct. 474; *Bess,* 357 U.S. at 59–60, 78 S.Ct. 1054. Whether this interest is sufficiently beneficial to qualify the asset as "property" is a matter of federal law. *Drye,* 528 U.S. at 58, 120 S.Ct. 474.

### 3. *Qualification of the Asset as "Property"*

▰ Satisfaction of the federal standard for "property" requires only that the interests give the taxpayer, at the time of attachment, a minimal level of control of the disposition of the asset for his or her personal benefit.[7] *See id.* Subsequent changes in the taxpayer's legal status or adverse consequences of the exercise of the interest "are of no concern to the operation of the federal tax law." *Nat'l Bank of Commerce,* 472 U.S. at 723, 105 S.Ct. 2919; *see Drye,* 528 U.S. at 52, 58–59, 120 S.Ct. 474. Thus, even if the in-

dividual loses or renounces his or her interest in the asset, federal law will still recognize the asset as "property" of the individual so long as exercise of the interest offered the taxpayer a potential benefit at the time of attachment. *See, e.g., Bess,* 357 U.S. at 56, 78 S.Ct. 1054; *cf. Lane v. UNUM Life Ins. Co. of Am.,* 293 F.Supp.2d 477, 479 (M.D.Pa. 2003) ("The law recognizes many situations in which a person may irrevocably renounce the right to receive a benefit but still be considered 'eligible' for it.").

▰ The mere right to designate a beneficiary, however, is not a sufficiently "beneficial interest" to satisfy the federal definition of property. *Bess,* 357 U.S. at 59–60, 78 S.Ct. 1054; *see Drye,* 528 U.S. at 52, 59 n. 6, 120 S.Ct. 474. As the Supreme Court stated nearly fifty years ago in the context of life insurance policies, the power of designation offers the owner no ability to use the funds for his or her personal benefit. *Bess,* 357 U.S. at 59–60, 78 S.Ct. 1054. Because disposition of the funds occurs after the death of the owner, that party cannot enjoy the asset or otherwise use it to his or her advantage. *Id.* Only the beneficiary stands to gain. Whatever incidental benefits the owner may obtain from the authority to designate is simply insufficient to meet the federal definition of "property." *Id.*

Because Richard Kelley's interest in the minimum payments was limited to the power of designation, those benefits did

---

rick Kelley had an independent right to compel payment of the remaining guaranteed amount.

7. Perhaps the greatest testament to the low threshold of this standard is the willingness of courts to recognize the existence of "property" in circumstances in which the taxpayer has only limited or contingent control over the asset. Liens have been permitted against real estate that cannot be sold or otherwise

alienated, *see Craft,* 535 U.S. at 284, 288, 122 S.Ct. 1414, contract revenues that are unearned and contingent upon future performance, *see Congress Talcott,* 993 F.2d at 319–20, inheritances that the taxpayer has irrevocably disclaimed, *see Drye,* 528 U.S. at 52, 120 S.Ct. 474, and the surrender value of life insurance policies that can no longer be surrendered, *see Bess,* 357 U.S. at 59–60, 78 S.Ct. 1054.

not constitute his "property" under the Internal Revenue Code. *See id.* No lien attached to those funds and the IRS lacked authority to issue a levy against them. *See* 26 U.S.C. §§ 6321, 6331. Patrick Kelley is entitled to receive the pension benefit payments free of any lien or levy asserted by the IRS.

## IV. *Conclusion*

For the foregoing reasons, the court finds that the guaranteed minimum benefits payable to Patrick Kelley as designated beneficiary under the pension benefit plan did not constitute "property" of Richard Kelley to which the tax lien attached. Therefore, the court will grant Patrick Kelley's motion for summary judgment and deny the motion of the IRS. However, because plaintiff's complaint includes claims for injunctive relief and costs that have not yet been addressed by the parties, entry of judgment will be deferred pending submission of briefs in support of and in opposition to these claims. *See* WRIGHT ET AL., *supra,* §§ 1717, 1719 (discussing claims for injunctive relief and costs in interpleader cases pursuant to Federal Rule of Civil Procedure 22).

An appropriate order will issue.

## *ORDER*

AND NOW, this 12th day of January, 2004, upon consideration of the cross-motions for summary judgment (Docs.26, 30), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendant United States of America's motion for summary judgment (Doc. 26) is DENIED.

2. Defendant Patrick Kelley's motion for summary judgment (Doc. 30) is GRANTED.

3. The order of court (Doc. 14) dated February 20, 2002, shall remain in full force and effect pending resolution of plaintiff's remaining claims.

4. Plaintiff shall file a brief in support of its remaining claims within fifteen (15) days of the date of this order. Defendants shall file a response to plaintiff's brief within fifteen (15) days of the filing of plaintiff's brief.

5. The Clerk of Court is directed to defer the entry of judgment until the conclusion of this case.