**Andrew POLK, Appellant,**

**v.**

**Werner H. KRAMARSKY, Commissioner of the New York State Division of Human Rights, The New York State Division of Human Rights, an agency of the State of New York, Appellees.**

**No. 1202, Docket 83-7074.**

United States Court of Appeals, Second Circuit.

Argued April 21, 1983.

Decided July 11, 1983.

Certiorari Denied Nov. 28, 1983.
See 104 S.Ct. 505.

---

James I. Meyerson, New York City, for appellant.

Arnold D. Fleischer, Asst. Atty. Gen. (Robert Abrams, Atty. Gen. of the State of N.Y., George D. Zuckerman, Deputy Sol. Gen., New York City, of counsel), for appellees.

Before OAKES, PIERCE and PECK,[*] Circuit Judges.

* Of the Sixth Circuit Court of Appeals, sitting by designation.

OAKES, Circuit Judge:

This appeal presents the question whether undue delay by a New York state agency in processing a discrimination claim deferred to it by the Equal Employment Opportunity Commission, *see New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 65, 100 S.Ct. 2024, 2031, 64 L.Ed.2d 723 (1980), gives rise to a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the New York Human Rights Law, or 42 U.S.C. § 1983 as a violation of due process, *see Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). We hold that it does not.

## BACKGROUND

On or about March 3, 1975, appellant Andrew Polk, a black male, filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC), alleging that he had been terminated from his position with the New York City Transit Authority because of his race. Shortly thereafter, the EEOC informed Polk that Title VII of the Civil Rights Act of 1964 required that he first file his discrimination complaint with the New York State Division of Human Rights (Division). Polk duly filed a complaint with the Division on March 17, 1975. On August 15, 1975, the Division found that there was probable cause to believe the appellant's allegations of discrimination, and accordingly recommended that the case proceed to a public hearing pursuant to § 297.4.a of the New York Human Rights Law, N.Y.Exec.Law §§ 290–301 (McKinney 1982). Despite this finding and recommendation, no hearing was in fact scheduled and the Division took no timely action to settle Polk's complaint.

On January 16, 1976, appellee Kramarsky, Commissioner of the Division, on his own motion, vacated the determination of probable cause after finding that it was not supported by sufficient evidence; he ordered further investigation of the complaint. On June 17, 1977, more than two years after the complaint was first filed, the Division again issued a determination of probable cause and recommended a public

hearing. Nevertheless, the hearing was not commenced before an administrative law judge (ALJ) until March 6, 1978. It was continued on April 20, 1978, June 21, 1978, and was eventually concluded on September 15, 1978.

On January 25, 1980, almost five years after the complaint was filed, the ALJ issued findings of fact, as well as a decision and order holding that the appellant's termination was an unlawful discriminatory practice under the New York Human Rights Law. But on April 25, 1980, appellee Kramarsky, again acting pursuant to his own motion, returned the matter to the ALJ for additional proceedings on the ground that there was insufficient evidence to support the decision. On May 13, 1980, the ALJ ordered the matter reopened to hear more evidence. Another hearing was scheduled for June 27, 1980.

In early June 1980, before the commencement of the second public hearing, the New York City Transit Authority filed suit in New York State Supreme Court, pursuant to Article 78, N.Y.Civ.Prac.Law § 7801–06 (McKinney 1981), seeking to prevent the Division from holding further proceedings on appellant's complaint on the ground that the passage of time had prejudiced its ability to defend the suit. On January 12, 1981, the Court granted the Transit Authority's application and ordered the Division to cease and desist from any further proceedings in the matter. Neither the Division nor Polk appealed this order, and on May 14, 1981, the Division issued an order closing the appellant's case and dismissing his complaint.

Polk immediately appealed the dismissal of the complaint to the New York State Human Rights Appeal Board, an entity separate from the New York State Division of Human Rights, see N.Y.Exec.Law § 297–a. On June 29, 1982, the Appeal Board vacated the order closing the case on the basis that the Commissioner erred in concluding that the Article 78 proceeding mandated dismissal. The Appeal Board ruled that the order required only that the Commissioner make a decision on the merits without further evidentiary proceedings. Upon remand from the Appeal Board, the Commission on July 20, 1982, dismissed Polk's complaint on the merits.

Under the procedural provisions of the Human Rights Law then in effect, Polk's complaint should have proceeded to a public hearing within sixty days after filing "unless the division ... dismissed the complaint or issued an order stating the terms of a conciliation agreement not objected to by the complainant."[1] A determination pursuant to the hearing should have been made within twenty days of the commencement of the hearing,[2] or, in other words, within eighty days after the complaint was filed. Even allowing for Commissioner Kramarsky's decisions to set aside the probable cause finding and to remand the complaint for further proceedings, it is clear that the more than seven-year period between the filing of the complaint on March 14, 1975, and its ultimate dismissal in July of 1982 violated both the spirit and the letter of the procedural provisions cited above. At no time was Polk—who was proceeding pro se for most of this period—informed by the Division that it could not or would not comply with the State's own time requirements. Nor was Polk informed of the interrelationship between the remedies and procedures under New York and federal law. Polk eventually received an EEOC right to sue letter and his Title VII suit is now pending in federal court.

Assisted by counsel, Polk filed an action in the United States District Court for the Southern District of New York on April 30, 1982, against the Division and Commissioner Kramarsky, alleging that the Division's failure to process his complaint in a timely fashion violated the New York Human Rights Law, and Title VII, 42 U.S.C. § 2000e, and his due process rights under

---

1. Former § 297.4.a, *amended by* L.1977, c. 729, § 2 (1977) (providing for public hearing within 270 days of filing).

2. Former § 297.4.c, *amended by* L.1977, c. 729, § 2 (1977) (providing for determination within 180 days of commencement of hearing).

the Fourteenth Amendment. He claimed that the delay in processing his complaint substantially prejudiced the preparation and prosecution of his discrimination action and caused him financial as well as emotional injury. He requested injunctive relief, a declaratory judgment, and monetary damages. Thomas P. Griesa, Judge, dismissed the complaint, holding that Title VII created no right of action against the Division. Polk's constitutional claim was rejected on the ground that

> the "process" available to plaintiff for pursuit of his discrimination claim must be taken to include the full remedial scheme, including the availability of the federal EEOC and the federal court. It is clear that adequate procedures were and are afforded to plaintiff.

What has been said disposes of plaintiff's claim under 42 U.S.C. § 1983.

The Court did not discuss *Logan v. Zimmerman Brush Co.*

## DISCUSSION

By giving state and local anti-discrimination agencies the first opportunity to hear and resolve claims of discrimination in employment, while at the same time permitting recourse to the federal agency and the federal courts "only when the State does not provide *prompt* or complete relief," *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 65, 100 S.Ct. 2024, 2031, 64 L.Ed.2d 723 (1980) (emphasis added), Congress recognized, at least implicitly, that state or local procedures might be inadequate or dilatory in their operation. With this recognition in mind, the Equal Employment Opportunity Act may be searched in vain to find provisions that imply a claim for relief for such dilatoriness. While *Owens v. Haas,* 601 F.2d 1242, 1247–51 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979) (prison inmate's claim as third-party beneficiary of federal/state contract is colorable), would suggest that appellant may have some rights by virtue of the EEOC contract with the State Division, *see* Amicus Brief of EEOC at 15–16; *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980);

*see also* Block, *Enforcement of Title VI Compliance Agreements by Third Party Beneficiaries,* 18 Harv.C.R.–C.L.L.Rev. 1 (1983), this claim was not made below and is therefore not available on appeal.

Similarly, the New York Human Rights Law does not provide any remedy against the Division. The New York Court of Appeals has held that the Human Rights Law time periods are directory in nature, not mandatory. *Sarkisian Brothers, Inc. v. State Division of Human Rights,* 48 N.Y.2d 816, 818, 399 N.E.2d 1146, 1147, 424 N.Y. S.2d 125, 126 (1979). This decision is of course binding on us. *O'Brien v. Skinner,* 414 U.S. 524, 531, 94 S.Ct. 740, 743, 38 L.Ed.2d 702 (1974); *Mrazek v. Suffolk County Board of Elections,* 630 F.2d 890, 899 (2d Cir.1980).

Polk's principal argument on appeal is that, under *Logan v. Zimmerman Brush Co.,* the time provisions established by the New York Human Rights Law amount to a property interest or entitlement independently protected by the due process clause. In *Logan* the Court addressed a situation where state law completely deprived a claimant of an opportunity to pursue a discrimination claim because the state agency failed to convene a factfinding conference within the statutorily specified period of 120 days. The Illinois Supreme Court held that compliance with the time limit was mandatory, and that noncompliance stripped the state agency of jurisdiction. The Supreme Court reversed, holding that the "right to use the [state's] adjudicatory procedures," 455 U.S. at 431, 102 S.Ct. at 1155, was a form of property and that the 120-day limit that the state supreme court found dispositive was violative of due process because it "finally destroy[ed] a property interest without first giving the putative owner an opportunity to present his claim of entitlement." 455 U.S. at 434, 102 S.Ct. at 1157 (footnote omitted). *Logan* thus stands for the proposition that if the state creates a statutory entitlement, due process concerns require that the entitlement not be destroyed without some opportunity for a hearing. But here Polk's Title VII suit—

filed shortly after this action was filed—is currently pending.[3] He also did not appeal the Human Rights Appeals Board's final order dismissing his state complaint. He therefore cannot claim that the delay here in fact deprived him of a favorable disposition of his claim.

The argument Polk is making—that procedural provisions are per se property interests and that by their very nature they establish what procedure is due—was not considered in *Logan*. Instead, the Court engaged in the familiar two-step analysis, 455 U.S. at 428, 102 S.Ct. at 1153, which asks, first, whether there is a property or liberty interest and, second, if there is, what process is due. The property right or entitlement found in *Logan* was not a right to a hearing within 120 days—the Court termed this "a procedural limitation on the claimant's ability to assert his rights, not a substantive element of the ... claim," *id.* at 433, 102 S.Ct. at 1156—but instead a right of action under the state statute involved, *id.* at 428–29, 102 S.Ct. at 1153–1154, which the procedural limitation destroyed. Here, Polk's right of action has survived, albeit long delayed. *Logan* is therefore distinguishable. As the *Logan* Court opined: "To put it as plainly as possible, the State may not *finally destroy* a property interest without first giving the putative owner an opportunity to present his claim of entitlement." 455 U.S. at 434, 102 S.Ct. at 1156 (emphasis added) (footnote omitted).[4]

Our conclusion is reinforced by the practical aspects of the case. What relief would be appropriate were Polk to prevail? He cannot be given a timely hearing. His claim that he was "prejudiced" by the delay is an assertion only; whether he was will await the outcome of the Title VII case. It may be that the Transit Authority is the party that was "prejudiced"; it sufficiently thought it was to bring Article 78 proceedings seeking dismissal. Or it may be that neither party was prejudiced or, more likely, that both were. To be sure, a declaration that the Division should have acted more promptly might do someone some good in the future. It is, however, obvious from the statement of the case that the Division did not do its job. That being said, what is to be gained by saying anything further? As for monetary damages, that question is not reached if there is no violation of due process rights, procedural or otherwise.

Judgment affirmed, without costs or attorneys' fees to either party.

---

**3.** We note that the New York City Transit Authority, the defendant in that action, has asserted a laches defense in its Answer and moved to dismiss the Complaint and/or for summary judgment, pursuant to Rules 12(b)(1), (b)(6), and 56(b) on the basis that, inter alia, the Title VII claim is barred by laches. Judge Conner, before whom the Title VII action is pending, has not yet ruled on the laches issue. We cannot address in this action the question whether, under the circumstances presented herein, dismissal of that action on the basis of laches would be in derogation of Polk's constitutional right to due process.

**4.** The Court in *Logan* distinguished *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), as involving only a loss of property " 'as a result of a random and unauthorized act by a state employee,' " 455 U.S. at 435–36, 102 S.Ct. at 1158, and went on to state:

Here, in contrast, it is the state system itself that *destroys* a complainant's property interest, *by operation of law,* whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness, or otherwise.

*Id.* at 436, 102 S.Ct. at 1158 (emphasis added).