**George C. PAPPAS, Plaintiff**

v.

**CITY OF LEBANON, et al., Defendants.**

**Civil Action No. 1:03–CV–1112.**

United States District Court,
M.D. Pennsylvania.

Aug. 16, 2004.

Robert William McAteer, Wiley P. Parker, Henry & Beaver LLP, Lebanon, PA, for Plaintiff.

John C. Romeo, Steven K. Ludwig, Fox Rothschild LLP, Philadelphia, PA, for Defendant.

### MEMORANDUM

CONNER, District Judge.

Presently before the court is a motion (Doc. 18) in which defendants, the City of Lebanon ("Lebanon"), the Lebanon Police Pension Fund Board ("Board"), and members of the Board, seek summary judgment on the claims of plaintiff, George C. Pappas ("Pappas"), under 42 U.S.C. § 1983. Pappas asserts that the Board violated his rights to due process by failing to assist him in meeting statutory prerequisites for receipt of pension benefits and by denying his request to vest benefits without notice and a hearing.

The question presented is whether an agency's denial of a claim to a benefit constitutes a "deprivation" of "property" under the Due Process Clause when governing law imposes conditions on receipt of the benefit that have not yet been deemed satisfied. For the reasons that follow, the court holds that it does not and will grant defendants' motion for summary judgment.

### I. *Statement of Facts* [1]

The facts of this case are as simple as they are unfortunate. After serving as an officer of the Lebanon Police Department for approximately eighteen years, Pappas submitted a letter of resignation to Robert A. Anspach ("Anspach"), the Mayor of Lebanon and chairperson of the Board. The resignation, to be effective on November 26, 2002, was accepted by Anspach on November 18, 2002. (Doc. 20 ¶¶ 2, 4–6, 12; Doc. 24).

The next day, Pappas notified the Board by letter that he wished to vest benefits that had accrued under a police pension plan:

I would respectfully request to vest my pension per the Codified Ordinances of the City of Lebanon, Section 175.06

---

**1.** In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff, as the non-moving party. *See infra* Part II; *see also infra* note 4.

"Persons Entitled to Benefits and Pensions," . . . which states "a Police Officer shall be entitled to apply to the Pension Fund Board and shall receive his pension vested pursuant to existing state law for Police Officers providing for vesting of pension after twelve (12) years of service". [sic]

Please accept this letter as notification of my intent to vest my pension and inform me of my rights and obligations in order to accomplish this goal.

(Doc. 20 ¶¶ 13, 15; Doc. 20, Ex. E; Doc. 24). Pappas received no response to the letter before the effective date of his resignation, nor any notification of a hearing on his request. (Doc. 20 ¶¶ 16, 21).

Upon receipt of the letter, Anspach recognized that the request was untimely under the governing statute and ordinance, which require notice of an intention to vest at least thirty days prior to the retiree's termination date.[2] Had Pappas been informed of this problem before November 26, 2002, he could have deferred his termination date to render his notification timely. (Doc. 20 ¶ 17; Doc. 20, Exs. H, M; Doc. 21, Ex. A; Doc. 21, Attach. 5 at 27; Doc. 23 ¶¶ 9, 11; Doc. 24; Doc. 28 ¶ 9). However, neither Anspach nor other members of the Board alerted Pappas to the issue. Instead, Anspach asked the municipal solicitor to provide an advisory opinion on whether the untimely notice precluded the vesting of benefits. (Doc. 20 ¶¶ 16–17; Doc. 21, Attach. 5 at 27; Doc. 23 ¶ 9; Doc. 24; Doc. 28 ¶ 9). The solicitor concluded that it did, and the Board voted to deny the application to vest benefits. Pappas received notice of the decision in May 2003. (Doc. 20 ¶¶ 17–23; Doc. 24).

Pappas requested a rehearing. He argued that the Board had violated due process requirements in denying the application without providing prior notice or an opportunity for a hearing. The Board denied the request. (Doc. 20 ¶¶ 25–26; Doc. 20, Exs. J, K; Doc. 24).

Soon thereafter, Pappas filed in a Pennsylvania court of common pleas a "complaint in the nature of an appeal from an adjudication under local agency law." (Doc. 1, Ex. A). This complaint alleged that defendants violated their legal obligations by failing to notify Pappas of the defective notice prior to his resignation and violated his rights to due process by denying his request without notice and a hearing. It asked that the court overturn the Board's decision and grant the request to vest pension benefits. (Doc. 1, Ex. A at 6–7). The complaint also included a separate claim for monetary damages under 42 U.S.C. § 1983 for violations of Pappas's rights to due process under the United States and Pennsylvania Constitutions. (Doc. 1, Ex. A at 7–9).

In July 2003, defendants removed the action to federal court, where it was assigned the above-captioned docket number. (Doc. 1). Pappas thereafter filed an amended complaint, amplifying his civil rights claim for violations of the Due Process Clause. The amended complaint eliminates the demand that the Board's decision be overturned. Instead, it "specifically requests that [plaintiff's] claim in the nature of an administrative appeal from the adjudication [of the Board] remain pendent in the Court of Common Pleas."[3] (Doc. 5 ¶ 31). The parties filed

---

**2.** *See* Pa. Stat. Ann. tit. 53, § 39302.1; Lebanon, Pa., Administrative Code § 175.07(k).

**3.** In January 2004, the Board granted Pappas a rehearing on the request to vest pension benefits. At the hearing, Pappas was represented by counsel and was permitted to offer testimonial and documentary evidence. (Doc. 20 ¶¶ 27–30; Doc. 20, Ex. C; Doc. 24). Thereafter, the Board denied the request, again citing non-compliance with statutory and municipal ordinance notice require-

cross-motions for summary judgment in May 2004.[4] (Docs. 18, 21).

## II. *Standard of Review*

Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury. It places the burden on the adverse party to produce affirmative evidence, beyond the allegations of the pleadings, in support of the claim. FED.R.CIV.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Corneal v. Jackson Township*, 313 F.Supp.2d 457, 464 (M.D.Pa.2003) ("[T]he non-moving party may not simply sit back and rest on the allegations in its complaint."), *aff'd*, 94 Fed.Appx. 76 (3d Cir. 2004). Only if this burden is met, through submission of sufficient evidence to sustain favorable jury findings with respect to each essential element of the claim, can the cause of action proceed. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–89, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see* FED. R.CIV.P. 56(c), (e) (requiring production of evidence "showing that there is a genuine issue for trial").[5] Otherwise, summary judgment must "be rendered forthwith" against the adverse party. *Id.*

## III. *Discussion*

■ Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996).

■ The claims in this case invoke the broad and amorphous protections of due process. The Fourteenth Amendment[6]

---

ments. On April 15, 2004, Pappas filed an appeal of the decision to the court of common pleas, where the case (an action separate from the one *sub judice*) presumably remains pending. (Doc. 20 ¶¶ 31–34, 38–39; Doc. 20, Ex. N; Doc. 24).

4. The court's disposition of defendants' motion for summary judgment (Doc. 18) renders it unnecessary to consider plaintiff's cross-motion (Doc. 21), which will be denied as moot.

5. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 231–32 (3d Cir.2001) ("Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.")

(quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir.1989)).

6. The complaint also purports to raise § 1983 claims for violations of the Due Process Clauses of the Fifth Amendment to the United States Constitution and Article I of the Pennsylvania Constitution. Neither may proceed. The Due Process Clause of the Fifth Amendment applies only to *federal* actors; the instant case involves only *state* actors. *See Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 55 (3d Cir.1983). And the federal civil rights laws provide redress for violations of only *federal* rights, not *state* constitutional provisions. *Elkin v. Fauver*, 969 F.2d 48, 52 (3d Cir.1992); *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir.1990). Hence, the court

provides that "[n]o state shall ... deprive any person of ... property, without due process of law." U.S. CONST. amend. XIV, § 1. From this short phrase has emerged an immense body of law, defining and redefining the procedural and substantive rights encompassed therein. *See, e.g., De-Blasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir.1995) (noting that due process is an area "famous for controversy, and not known for its simplicity") (quoting *Schaper v. City of Huntsville*, 813 F.2d 709, 715 (5th Cir.1987)), *overruled on other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392 (3d Cir.2003). The nature and extent of these rights is still far from clear, but it is now well settled that the essential elements of a due process violation occur when a state actor "deprive[s]" a person of "property."[7] U.S. CONST. amend. XIV, § 1; *see Gikas v. Wash. Sch. Dist.*, 328 F.3d 731, 735 (3d Cir.2003). Thus, the threshold issues of any due process analysis are (1) whether the person possessed a cognizable property interest and (2) whether the person suffered a deprivation of that interest by a state actor. *See id.*

## A. Property Under the Due Process Clause

The Constitution recognizes "property," but does not create it. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), *quoted with approval in Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998). Property, in the constitutional sense, is merely a label applied to a benefit when an individual possesses a "legitimate entitlement" to it under "existing rules or understandings." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 779–80, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980) (quoting *Klein v. Califano*, 586 F.2d 250, 258 (3d Cir.1978) (en banc)); *Goss v. Lopez*, 419 U.S. 565, 573–74, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *cf. Asbestos Workers Local No. 23 Pension Fund ex rel. Norcross v. United States*, 303 F.Supp.2d 551, 557 (M.D.Pa.2004) (examining "property" under Internal Revenue Code).[8] These "rules" and "understandings" arise from sources independent of the Constitution, usually state statutes and common law. *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. When these sources provide an individual with a presently enforceable right to control a benefit, the Constitution recognizes the benefit as "property" worthy of due process protection.[9] *Id.; cf. Asbestos*

---

will grant defendants' motion for summary judgment as to these claims.

7. The complaint does not implicate the other interests protected by the Due Process Clause, in "life" and "liberty," *see* U.S. CONST. amend XIV, § 1, and the court will not address these aspects of Fourteenth Amendment jurisprudence.

8. *See generally* Thomas W. Merrill, *The Landscape of Constitutional Property*, 86 VA. L.REV. 885 (2000) (arguing for harmonization of federal standards for recognition of "property" under various constitutional and statutory provisions).

9. Whether a benefit is recognized as "property" under the Constitution is a matter of federal law, but the substantive interests informing the federal standard are created by state law. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) ("Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause.") (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. 2701); *accord Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429–31, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (stating that constitutional "property" will be recognized when there exists a "legitimate entitlement grounded in state law"); *cf. Asbestos Workers*, 303 F.Supp.2d at 557 ("[F]ederal law governs whether an asset constitutes 'property' ... [but] state law creates the 'interests' by which

*Workers,* 303 F.Supp.2d at 557 (citing *Drye v. United States,* 528 U.S. 49, 57–58, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999)).

"Legitimate entitlement" has been found most often in those benefits that the state has accorded in the past, and that the individual has a reasonable expectation will continue in the future. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 60, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *see also Ruiz v. New Garden Township,* 376 F.3d 203, 205–08 (3d Cir.2004). Once welfare payments commence, a welfare recipient has a property interest in continued payments. *Goldberg v. Kelly,* 397 U.S. 254, 260–66, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *see also Atkins v. Parker,* 472 U.S. 115, 128, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985) (food stamps). Once tenure is granted, a professor has a property interest in continued employment. *See Roth,* 408 U.S. at 576–77, 92 S.Ct. 2701; *see also Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (civil service employment). And, once retirement is approved, a retiree has a property interest in continued pension payments. *See Leheny v. City of Pittsburgh,* 183 F.3d 220, 227 (3d Cir.1999); *see also Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (social security payments). Commencement of a benefit is generally accompanied by a reasonable expectation that it will continue. *See Am. Mfrs.,* 526 U.S. at 60, 119 S.Ct. 977.

A materially different question is presented when the benefit has not yet commenced, and when a determination of entitlement has not yet been made. *Id.* Contracts and statutes rarely accord an unqualified and immediate right to receive a benefit. *See, e.g., id. But cf. Goss,*

419 U.S. at 573–74, 95 S.Ct. 729 (holding that student held "property" interest in public education when state extended opportunity to all persons without qualification). Typically, the claimant must meet certain conditions as a prerequisite to receipt. The claimant secures an "enforceable right to control [the] benefit" only after the governing authority has made a threshold determination of satisfaction of these conditions. *See Am. Mfrs.,* 526 U.S. at 60, 119 S.Ct. 977; *see also Lujan v. G & G Fire Sprinklers, Inc.,* 532 U.S. 189, 194–98, 121 S.Ct. 1446, 149 L.Ed.2d 391 (2001); *Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.,* 103 F.3d 1165, 1177–79 (3d Cir.1997); *Blanding v. Pa. State Police,* 12 F.3d 1303, 1306–07 (3d Cir.1993).

■ Until this determination is made, the Constitution does not view these benefits as property. Any benefit that has not commenced, and includes conditions on receipt not yet deemed satisfied, is not a benefit to which a person enjoys an immediate and legitimate right of entitlement. *Lujan,* 532 U.S. at 194–98, 121 S.Ct. 1446; *Am. Mfrs.,* 526 U.S. at 60, 119 S.Ct. 977; *Marshall v. Lauriault,* 372 F.3d 175, 186–87 (3d Cir.2004); *Pierre v. West,* 211 F.3d 1364, 1366–67 (Fed.Cir.2000); *see also Angstadt ex rel. Angstadt v. Midd–West Sch. Dist.,* 377 F.3d 338, 344–45 (3d Cir. 2004). Fundamentally, it is the difference between *eligibility* and *entitlement. See Am. Mfrs.,* 526 U.S. at 60, 119 S.Ct. 977. The former means that the person has an ability to seek a benefit. The latter means that the person may now control it. And only the latter is constitutionally significant for purposes of "property." *See id.;*

this standard is judged.") (citing *Drye v. United States,* 528 U.S. 49, 57–58, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999)). *See generally* Merrill, *supra* note 8, at 926–30 (discussing distinction and noting that "the *Memphis Light/Logan* definition of constitutional property . . . has never been given the prominence it deserves").

*cf. Asbestos Workers,* 303 F.Supp.2d at 557.

To hold otherwise would render every question of state contract and statutory interpretation a matter of constitutional concern. Compliance *vel non* with contractual or statutory conditions would become the threshold issue of due process analysis. *See Reich v. Beharry,* 883 F.2d 239, 242 (3d Cir.1989), *quoted in Linan–Faye Constr. Co. v. Hous. Auth.,* 49 F.3d 915, 931–32 (3d Cir.1995). Federal courts would become embroiled in every contract dispute between states and their employees. *Id.* The Due Process Clause obviously does not compel such intrusion. *See Am. Mfrs.,* 526 U.S. at 60, 119 S.Ct. 977; *see also Reich,* 883 F.2d at 242 ("[A] wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause."). Not every alleged breach of a state contract is a due process claim. *Am. Mfrs.,* 526 U.S. at 60, 119 S.Ct. 977; *see also DeBoer v. Pennington,* 287 F.3d 748, 749–50 (9th Cir.2002).

■ Entitlement to a benefit, creating a "property" interest under the Due Process Clause, arises only when government has created an unqualified right to receive the benefit or when the appropriate authority has deemed conditions to receipt satisfied. *Lujan,* 532 U.S. at 194–98, 121 S.Ct. 1446; *Am. Mfrs.,* 526 U.S. at 60, 119 S.Ct. 977; *Goss,* 419 U.S. at 573–74, 95 S.Ct. 729. This principle ensures that constitutional questions will not be dependent on factual issues controlled by state law. *See Am. Mfrs.,* 526 U.S. at 60, 119 S.Ct. 977. It also insulates federal courts from the threshold determination, properly considered by state authorities in the first instance, of whether an individual has satisfied conditions for receipt of the benefit. *See id.*

Which brings the court to three problematic decisions of the Third Circuit Court of Appeals: *Ross v. Horn,* 598 F.2d 1312 (3d Cir.1979), *Kelly v. Railroad Retirement Board,* 625 F.2d 486 (3d Cir.1980), and *Larsen v. Senate of Pennsylvania,* 154 F.3d 82 (3d Cir.1998). All three cases involved a benefit to which the plaintiff had not yet been deemed *entitled* by governing authority, but for which the plaintiff was clearly *eligible* under statutory or contractual provisions. *See Ross,* 598 F.2d at 1317–18 (unemployment compensation); *Kelly,* 625 F.2d at 489–90 (disability annuity payments); *Larsen,* 154 F.3d at 92 (retirement benefits). And in all three cases the Third Circuit held that mere eligibility for the benefit rendered it "property" of the individual: "[D]ue process must attach to the process of determining ineligibility, whether at the outset or after receipt of benefits." *Kelly,* 625 F.2d at 490; *accord Larsen,* 154 F.3d at 92; *Ross,* 598 F.2d at 1317–18.

The Supreme Court subsequently rejected this view in *American Manufacturers Mutual Insurance Co. v. Sullivan,* 526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999), and *Lujan v. G & G Fire Sprinklers, Inc.,* 532 U.S. 189, 121 S.Ct. 1446, 149 L.Ed.2d 391 (2001).[10] Both cases involved a benefit for which the plaintiff was clearly *eligible* under state law, but to which the plaintiff had not yet been deemed *entitled* by state government. *Am. Mfrs.,* 526 U.S. at 59–61 & n. 13, 119 S.Ct. 977 (medical benefits); *Lujan,* 532 U.S. at 194–98, 121 S.Ct. 1446 (contractual payments). The Court held that, until the governing authority determined that applicable conditions had been satisfied, no cognizable "property" interest arose. *Am.*

10. The court requested and received supplemental briefing on the effect of *American Manufacturers* and *Lujan* on the case *sub judi-* ce. Counsels' cogent analyses of the issue are appreciated.

*Mfrs.*, 526 U.S. at 60, 119 S.Ct. 977. Only when the individual has been deemed entitled to the benefit, either through receipt or through an independent determination by the appropriate authority, will the Constitution recognize the benefit as property. *Id.; accord Lujan,* 532 U.S. at 194–98, 121 S.Ct. 1446.

Under *American Manufacturers* and *Lujan,* legitimate entitlement exists when the governing authority has created an unqualified right to a benefit or has confirmed satisfaction of all conditions to receipt. *Id.; Am. Mfrs.*, 526 U.S. at 60, 119 S.Ct. 977; *see also Goss,* 419 U.S. at 573–74, 95 S.Ct. 729. The Third Circuit cases holding to the contrary [11] have been implicitly overruled. *Compare Larsen,* 154 F.3d at 92 (stating that the denial of payments that the plaintiff contends he is owed under a contract *is* a deprivation of a property right), *with Lujan,* 532 U.S. at 196, 121 S.Ct. 1446 (stating that the denial of a "payment that [the plaintiff] contends it is owed under a contract" *is not* a deprivation of a property right).

■ This court does not lightly abjure binding decisions of the court of appeals. *See Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 867 (3d Cir.1984). But, when those decisions are obviously undermined by more recent opinions of the Supreme Court, the district court has an obligation to recognize the former as overruled. *See Mennen Co. v. Atlantic Mut. Ins. Co.,* 147 F.3d 287, 294 n. 9 (3d Cir. 1998); *see also Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1115–16 (3d Cir.1993). Stare decisis requires nothing less. *See United States v. Mitlo,* 714 F.2d 294, 298 (3d Cir.1983)

("[T]he judgments of the highest court in any jurisdiction are binding on all other courts ....") (quoting *Allegheny Gen. Hosp. v. NLRB,* 608 F.2d 965, 970 (3d Cir.1979)); *cf. Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) (Marshall, C.J.) ("If two laws conflict with each other, the courts must decide on the operation of each.").

■ Under *American Manufacturers* and *Lujan,* Pappas did not possess a "property" interest in the retirement payments. The statute and ordinance defining his rights to these payments expressly condition receipt on satisfaction of certain criteria:

(1) the member must file with the management board of the police pension fund a written notice of his or her intention to vest;

(2) the member must include in the notice, the date the member intends to terminate his or her service as a full-time police officer;

(3) the termination date shall be at least thirty days later than the date of notice to vest; [and]

(4) the member must be in good standing with the police department on the date of notice to vest....

PA. STAT. ANN. tit. 53, § 39302.1; *accord* LEBANON, PA., ADMINISTRATIVE CODE § 175.07(k). To date, the municipal agency with authority over the retirement program has not made a determination that Pappas has satisfied these conditions. The court will not endeavor to do so now. Pappas has no present entitlement to the retirement payments, and they do not constitute "property" for purposes of the Due Process Clause.[12] *Accord Lujan,* 532 U.S.

---

**11.** *Larsen,* 154 F.3d at 92; *Kelly,* 625 F.2d at 489–90; *Ross,* 598 F.2d at 1317–18, *cited with approval in Wilkinson v. Abrams,* 627 F.2d 650, 664 (3d Cir.1980); *see also Sullivan v. Barnett,* 139 F.3d 158, 168 (3d Cir.1998) (finding that medical benefits for which the plaintiff was eligible—but not yet entitled— constituted "property" of the plaintiff), *rev'd sub nom. Am. Mfrs.,* 526 U.S. 40, 119 S.Ct. 977.

**12.** It is important to note that Pappas does not contend that the Board's denial precludes

at 194–98, 121 S.Ct. 1446; *Am. Mfrs.*, 526 U.S. at 60, 119 S.Ct. 977; *Marshall*, 372 F.3d at 186–87; *DeBoer*, 287 F.3d at 749–50; *see also Angstadt*, 377 F.3d at 344–45.

 That Pappas has no present entitlement to the payments themselves, however, does not mean that he has no present entitlement to a claim for those payments. Benefits, for purposes of due process "property," include not only tangible assets but also claims to contractual performance and choses in action. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429–31, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *see also Lujan*, 532 U.S. at 194–98, 121 S.Ct. 1446; *Am. Mfrs.*, 526 U.S. at 61 n. 13, 119 S.Ct. 977; *cf. Asbestos Workers*, 303 F.Supp.2d at 557. When governing "rules or understandings" accord a cause of action for an alleged harm, such as a breach of a state statute or contract, the individual has a "legitimate entitlement" to submit that claim for resolution through established adjudicatory procedures. *Logan*, 455 U.S. at 429–31, 102 S.Ct. 1148; *see Am. Mfrs.*, 526 U.S. at 61 n. 13, 119 S.Ct. 977. Although the individual is not presently entitled to the remedy sought, he or she is entitled to press a claim for it. *Id.* This cause of action is a presently enforceable benefit and constitutes "property" under the Due Process Clause.[13] *Id.; Logan*, 455 U.S. at 429–31, 102 S.Ct.

1148; *cf.* William Van Alstyne, *Cracks in the New Property: Adjudicative Due Process in the Administrative State*, 62 CORNELL L.REV. 445, 449–51 (1977) (arguing for broad construction of "property" to encompass any form of "procedural grossness" in adjudicatory procedures), *cited in O'Bannon*, 447 U.S. at 795–96, 100 S.Ct. 2467 (Blackmun, J., concurring in judgment).

As a member of the pension plan, Pappas is eligible for retirement payments under the governing statute and ordinance. *See* PA. STAT. ANN. tit. 53, § 39302.1; LEBANON, PA., ADMINISTRATIVE CODE § 175.07(k). He has a present right to seek these payments in the courts of the Commonwealth. *See* 2 PA. CONS.STAT. § 752; 42 PA. CONS.STAT. §§ 723, 762; *see also Diener v. Reed*, 232 F.Supp.2d 362, 379 (M.D.Pa.2002), *aff'd*, 77 Fed.Appx. 601 (3d Cir.2003). Although this claim may eventually be denied, Pappas has a right to present it for consideration. *See Logan*, 455 U.S. at 429–31, 102 S.Ct. 1148. This right constitutes a "property" interest under the Due Process Clause. *Id.*

### B. *Deprivation Under the Due Process Clause*

 Of course, the mere existence of a property interest cannot implicate due process protections unless there is also a deprivation of that interest by state officials.

---

him from recovering his contributions to the pension fund. Indeed, in the letter informing Pappas of the denial of his request to vest, Anspach offered to refund all pension contributions at Pappas's request. (Doc. 20, Ex. I).

**13.** This distinction, between the remedy itself and a claim for the remedy, is essential to understanding constitutional "property" in light of *American Manufacturers* and *Lujan*. *See Lujan*, 532 U.S. at 194–98, 121 S.Ct. 1446; *Am. Mfrs.*, 526 U.S. at 61 & n. 13, 119 S.Ct. 977; *see also Logan*, 455 U.S. at 429–31, 102 S.Ct. 1148; *cf. Asbestos Workers*, 303 F.Supp.2d at 557 (stating that "initial classification of the [benefit] demands close atten-

tion"). The court respectfully suggests that a failure to appreciate fully this conceptual divide lies at the heart of those opinions downplaying the significance of the Supreme Court decisions. *See G & G Fire Sprinklers, Inc. v. Bradshaw*, 204 F.3d 941, 943–44 (9th Cir. 2000), *rev'd sub nom. Lujan*, 532 U.S. 189, 121 S.Ct. 1446; *Conn. State Dep't of Soc. Servs. v. Thompson*, 242 F.Supp.2d 127, 155–58 (D.Conn.2002); *Bass v. Butler*, No. 98–4112, 1999 WL 391483, at *2 (E.D.Pa. May 3, 1999). For this reason, the court rejects the analyses presented in those opinions. *Accord G & G Fire Sprinklers*, 204 F.3d at 946 (Kozinski, J., dissenting).

A constitutionally cognizable deprivation occurs when an individual's reasonable expectation to use and control a benefit is so diminished as to reduce substantially the value of the benefit. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *see also Tulsa Prof'l Collection Servs. v. Pope*, 485 U.S. 478, 488, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988).[14] Reasonable expectation, like legitimate entitlement, is founded on governing rules and understandings, usually state law. *See Texaco, Inc. v. Short*, 454 U.S. 516, 526, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982) (citing *Roth*, 408 U.S. at 577, 92 S.Ct. 2701); *see also Logan*, 455 U.S. at 432–33, 102 S.Ct. 1148; *Holman v. Hilton*, 712 F.2d 854, 857–58 (3d Cir.1983). When these rules accord a right to use or control a benefit, and the exercise of that right is significantly restricted or eliminated, the Constitution recognizes a deprivation. *Atkins*, 472 U.S. at 128, 105 S.Ct. 2520; *Mennonite Bd.*, 462 U.S. at 798, 103 S.Ct. 2706; *Roth*, 408 U.S. at 576–77, 92 S.Ct. 2701; *see also Logan*, 455 U.S. at 432–33, 102 S.Ct. 1148.

■■■ Deprivation of a cause of action occurs when adjudicatory procedures for vindication of the claim are foreclosed. *Am. Mfrs.*, 526 U.S. at 60 n. 13, 119 S.Ct. 977; *Logan*, 455 U.S. at 429–33, 102 S.Ct. 1148. The only "use" of a cause of action is prosecution through adjudicatory procedures, and the only "reasonable expectation" that an individual can have is that these procedural paths will remain available for resolution of the claim. *See id.* at 429–31, 102 S.Ct. 1148; *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 311–13, 70 S.Ct. 652, 94 L.Ed. 865 (1950). As such, no deprivation of a claim occurs until resort to these procedures is foreclosed, whether by final denial of the claim, *see*

*Tulsa Prof'l*, 485 U.S. at 484–88, 108 S.Ct. 1340; *Logan*, 455 U.S. at 429–33, 102 S.Ct. 1148; *see also Am. Mfrs.*, 526 U.S. at 60 n. 13, 119 S.Ct. 977, or by obstruction of access to judicial remedies, *see Holman*, 712 F.2d at 858; *Assocs. in Obstetrics & Gynecology v. Upper Merion Township*, 270 F.Supp.2d 633, 659–60 (E.D.Pa.2003); *see also Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *C & K Coal Co. v. Taylor*, 165 F.3d 254, 258–59 (3d Cir.1999); *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 163–67 (2d Cir.2001); *Heinrich ex rel. Heinrich v. Sweet*, 62 F.Supp.2d 282, 316 (D.Mass. 1999). So long as adjudicatory procedures remain available, the individual has not suffered a deprivation of the cause of action. *Sosna v. Iowa*, 419 U.S. 393, 410, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *see Am. Mfrs.*, 526 U.S. at 60 n. 13, 119 S.Ct. 977; *Logan*, 455 U.S. at 429–33, 102 S.Ct. 1148; *see also Nat'l Org. for Women*, 261 F.3d at 173–76 (Meskill, J., concurring) (citing *Polk v. Kramarsky*, 711 F.2d 505 (2d Cir. 1983)); *G & G Fire Sprinklers, Inc. v. Bradshaw*, 204 F.3d at 946 (9th Cir.2000) (Kozinski, J., dissenting), *rev'd sub nom. Lujan*, 532 U.S. 189, 121 S.Ct. 1446.

This standard does not amount to an exhaustion requirement. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (stating that exhaustion is generally not required for § 1983 claims); *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir.2000) (same). "[E]xhaustion *simpliciter* is analytically distinct from the requirement that the harm alleged has occurred." *Id.* Resort to state adjudicatory procedures is not necessary in these circumstances merely to promote judicial economy or comity. *Cf. Porter v. Nussle*, 534 U.S. 516, 524–25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (discussing pur-

**14.** *Cf. Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Pace Res., Inc. v. Shrews-* *bury Township*, 808 F.2d 1023, 1033 (3d Cir. 1987). *See generally* Merrill, *supra* note 8.

pose of requirement of 42 U.S.C. § 1997e(a) that prisoners exhaust administrative remedies prior to instituting a § 1983 action). It is necessary because until those procedures have been foreclosed the cause of action remains viable and no deprivation has occurred. *Sosna*, 419 U.S. at 410, 95 S.Ct. 553; *see Am. Mfrs.*, 526 U.S. at 60 n. 13, 119 S.Ct. 977; *Logan*, 455 U.S. at 429–33, 102 S.Ct. 1148. "Exhaustion" in this sense is not a procedural formality but a substantive element of the alleged due process violation. *Cf. Alvin*, 227 F.3d at 116; *Nat'l Org. for Women*, 261 F.3d at 169.

Until his claim has been finally denied by the state judiciary, Pappas has not suffered a deprivation of property. Pennsylvania law provides a full battery of adjudicatory procedures for claims to municipal retirement payments, including *de novo* review in the court of common pleas and appellate review by the commonwealth and supreme courts. *See* 2 PA. CONS.STAT. § 752; 42 PA. CONS.STAT. §§ 723, 762; *see also Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1991), *overruled on other grounds by United Artists*, 316 F.3d 392; *Boudwin v. Great Bend Township*, 921 F.Supp. 1326, 1329–30 (M.D.Pa.1996). No evidence suggests that state officials have prevented Pappas from utilizing these remedies. To the contrary, Pappas has presented his claim for retirement payments to the court of common pleas, and may seek appellate review if necessary. While these procedures remain available, no deprivation has occurred. *See Lujan*, 532 U.S. at 196–97, 121 S.Ct. 1446; *Am. Mfrs.*, 526 U.S. at 60 n. 13, 119 S.Ct. 977; *Nat'l Org. for Women*, 261 F.3d at 165; *see also G & G Fire Sprinklers*, 204 F.3d at 946 (Kozinski, J., dissenting).

Moreover, assuming *arguendo* that the claim has been effectively extinguished, the deprivation is not attributable to defendants and is not actionable under the Fourteenth Amendment. *See Am. Mfrs.*, 526 U.S. at 49–50 & n. 8, 119 S.Ct. 977 (stating that a deprivation can constitute a violation of the Fourteenth Amendment only if it is attributable to state action). The crux of Pappas's argument is that the Board and its members had a legal obligation to alert him, before his resignation date, that a notice of intention to vest must be filed thirty days prior to termination of employment. He asserts that this failure precludes him from successfully prosecuting his claim for payments. Whatever the validity of this assertion,[15] defendants' involvement was not so significant as to render the alleged deprivation attributable to them. *See id.; see also Tulsa Prof'l*, 485 U.S. at 484–88, 108 S.Ct. 1340.

State officials generally have no constitutional obligation to assist individuals in pursuing causes of action.

---

**15.** The relationship between the Board and retirees, *see McCarrell v. Cumberland County Employees Ret. Bd.*, 120 Pa.Cmwlth. 94, 547 A.2d 1293, 1296 (1988) (stating that retirement board has fiduciary obligation towards retirees), and the wealth of equitable remedies available in the courts of the Commonwealth, *see* 1 PA. CONS.STAT. § 1928 (requiring liberal construction of statutes); *Chanoff v. Fiala*, 440 Pa. 424, 271 A.2d 285, 288 (1970) (modifying contractual terms to satisfy equitable concerns over notice provision), suggest that a favorable outcome on this claim may not be as implausible as Pappas now contends. Of course, the court offers no opinion on the merits of the claim other than to note that it is unresolved and that a host of issues remain. (*See* Doc. 20, Ex. E (Letter from Pappas to Board of 11/19/2002) ("Please accept this letter as notification of my intent to vest my pension and inform me of my rights and *obligations* in order to accomplish this goal.") (emphasis added)). The court is confident that these issues will be properly, timely, and fairly resolved by the fine jurists of the court of common pleas to whom this matter is remanded. *See infra* Part IV.

*Brown v. Grabowski,* 922 F.2d 1097, 1113–16 (3d Cir.1990). But if a "special relationship" exists between an official and the individual, rendering the latter's ability to prosecute his or her claim somehow dependent on the official's actions, an affirmative obligation to provide assistance may arise. *See id.; see also Phila. Police & Fire Ass'n for Handicapped Children, Inc. v. City of Philadelphia,* 874 F.2d 156, 166–68 (3d Cir.1989) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 196–97, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). A government agency may stand in a special relationship with petitioners who cannot secure judicial review until the agency provides a decision. *See Logan,* 455 U.S. at 432–34, 102 S.Ct. 1148. Prison officers may stand in a special relationship with inmates who cannot communicate with the court absent the officers' approval. *See DeShaney,* 489 U.S. at 197–99, 109 S.Ct. 998; *see also Germany v. Vance,* 868 F.2d 9, 14–17 (1st Cir.1989). And municipal officials may stand in a special relationship with residents who have been promised assistance in resolving disputes, when such promises justifiably induce those residents to forgo acting on their own behalf.[16] *See Kneipp,* 95 F.3d at 1205 (holding that a state actor who renders an individual more vulnerable to a deprivation may be liable for the deprivation under § 1983) (citing *DeShaney,* 489 U.S. at 201, 109 S.Ct. 998). In such cases, a denial of the individual's claim caused by delay in prosecution is properly attributable to the state officials. *See Logan,* 455 U.S. at 432–34, 102 S.Ct. 1148; *see also Am. Mfrs.,* 526 U.S. at 49–59, 119 S.Ct. 977; *Tulsa Prof'l,* 485 U.S. at 484–88, 108 S.Ct. 1340.

■ As a matter of *federal* law, Pappas has presented insufficient evidence of a "special relationship" to establish a deprivation by defendants. Neither the Board nor its members exercised a form of custodial control over Pappas that restricted his ability to pursue his claim. Nothing in the record suggests that the Board or its members promised Pappas that they would provide assistance or otherwise induced him to refrain from taking necessary action. No special relationship existed,[17] and Pappas suffered no deprivation attributable to defendants.

---

16. Although *Kneipp* labeled this as the "state-created danger" doctrine, rather than the "special relationship" doctrine, *see Kneipp,* 95 F.3d at 1205, the distinction is one of nomenclature rather than substance. When a state actor has made affirmative representations that justifiably induce an individual from taking available actions to protect himself or herself, the state actor has both imposed a form of constructive custody on the individual, giving rise to a "special relationship," *see Brown,* 922 F.2d at 1113–16 (stating that "special relationship" exists when state holds some form of custodial control over individual), and enhanced the danger to which the individual is exposed, giving rise to a "state-created danger," *see Kneipp,* 95 F.3d at 1205 (stating that "state-created danger" exists when affirmative actions of a state actor increase the risk to an individual). *But see id.* at 1209 n. 22 (distinguishing doctrines). *See generally Pinder v. Johnson,* 54 F.3d 1169, 1174–76 (4th Cir.1995) (discussing doctrines).

17. The finding that no "special relationship" existed as a matter of *federal law* does not, of course, dictate a similar finding as a matter of *state law. See Brown,* 922 F.2d at 1111–16 (finding that state statute requiring officials to notify domestic abuse victims of their right to seek judicial remedies did not create a "special relationship," implicating due process protections, but that violation of statute was likely actionable under state law). Independent of federal standards, state law may impose upon defendants an obligation of affirmative assistance in the vesting of pension benefits or may provide Pappas with an equitable remedy for his alleged non-compliance with notice conditions. The court expresses no opinion on these issues but commits them to the sound judgment of the courts of the Commonwealth. *See supra* note 15; *see also infra* Part IV.

## IV. *Conclusion*

Because Pappas has not suffered a deprivation of property by state actors, his claims under 42 U.S.C. § 1983 for violations of procedural and substantive due process cannot proceed. The motion for summary judgment will be granted, and, there being no just reason for delay, the court will direct the entry of final judgment in defendants' favor on these claims. *See* FED.R.CIV.P. 54(b) ("When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.").

No federal claims remain pending in this case, and the parties offer no reason for the court to entertain the unresolved state law claim, in the nature of an appeal from the Board's decision.[18] To the contrary, the amended complaint "specifically requests ... [that the state claim] remain pendent" in the Pennsylvania judiciary. (Doc. 5 ¶ 31). This request will be honored. The court will decline to exercise supplemental jurisdiction over the claim and will remand the above-captioned case to the court of common pleas from which it was removed. *See* 28 U.S.C. § 1367(c) ("The district court[ ] may decline to exercise supplemental jurisdiction over a [state law] claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); *Hudson United Bank v. LiTenda Mortgage Corp.*, 142 F.3d 151, 157–58 (3d Cir.1998) (noting district courts' authority to remand removed cases after declining to exercise jurisdiction pursuant to § 1367(c)).

An appropriate order will issue.

### ORDER

AND NOW, this 16th day of August, 2004, upon consideration of the cross-motions for summary judgment (Docs. 18, 21), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 18) is GRANTED.

2. Plaintiff's motion for summary judgment (Doc. 21) is DENIED as moot.

3. The Clerk of Court is directed to enter JUDGMENT in favor of defendants and against plaintiff as to the claims under 42 U.S.C. § 1983 alleged in the second and third counts of plaintiff's amended complaint (Doc. 5).

4. The above-captioned case is REMANDED to the Court of Common Pleas of Lebanon County, Pennsylvania.

5. The Clerk of Court is directed to CLOSE this case.

---

18. *See Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (emphasis added), *quoted in Hedges v. Musco,* 204 F.3d 109, 123 (3d Cir. 2000).